IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ASHLEY DISTRIBUTION SERVICES, )<br>LTD., )<br>Defendant. )<br>)<br>)<br>_____ ) | CIVIL ACTION NO.<br>1:18-cv-00338<br><br>COMPLAINT<br><br>**JURY TRIAL DEMAND** |

NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Farrell A. Welch ("Welch"). As alleged with greater particularity below, the Equal Employment Opportunity Commission ("Plaintiff" or "the Commission") alleges that Defendant Ashley Distribution Services, Ltd. ("Defendant") failed to hire Welch, a qualified individual with a disability as defined by the Americans with Disabilities Act ("ADA"), in violation of the Americans with Disabilities Act. Specifically, Defendant regarded Welch as having a disability and refused to hire Welch based on the perceived disability.

JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345.  This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.§ 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of North Carolina.

PARTIES

3.      Plaintiff, the Equal Employment Opportunity Commission, is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4.      At all relevant times, Defendant, a Wisconsin corporation, has continuously been doing business in the State of North Carolina and the City of Advance, and has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. §§ 12111(5), (7).

6. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

7. More than thirty days prior to the institution of this lawsuit, Welch filed a charge with the Commission alleging violations of the ADA by Defendant. Defendant, Ashley Distribution Services, Ltd., responded to Welch's charge and participated in all aspects of the Commission's administrative investigation.

8. On or about December 29, 2017, the Commission issued to Defendant a Letter of Determination on Welch's charge finding reasonable cause to believe that the ADA was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

10. On or about February 28, 2018, the Commission issued to Defendant a Notice of Failure of Conciliation. The Notice advised Defendant that the Commission

3

was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

12. Around October 2016, Defendant engaged in an unlawful employment practice at Defendant's Advance, North Carolina distribution center, in violation of Section 102 of Title I of the ADA, 42 U.S.C. § 12112, when it refused to hire Welch because Defendant regarded Welch as disabled.

13. Welch is a qualified individual with a disability under Section 3 of the ADA, 42 U.S.C. § 12102(3). Defendant regarded Welch as having a disability by subjecting him to an adverse employment action, rescinding a job offer and denying Welch employment, because of a physical impairment, a left shoulder rotator cuff injury.

14. Welch has worked as a commercial truck driver for over 30 years. Welch's experience includes years of over the road (OTR), tractor-trailer, and heavy commercial truck driving experience. Welch has a valid commercial driver's license.

15. In or around February 2015, Welch injured his left rotator cuff when a tree fell on him while he was performing yard work.

16. Welch went to see a doctor for his injury. The doctor told Welch that he may have torn his rotator cuff, but the diagnosis could not be confirmed without further evaluation, including an MRI, which Welch has not undergone since the injury.

17. Welch has lived with the left rotator cuff injury since in or around February 2015. Since his injury, Welch is not able to raise his left arm directly overhead.

18. The doctor released Welch to return to work in or around March 2015 without restrictions.

19. Since in or around March 2015, Welch has worked as a truck driver performing all duties necessary to drive heavy commercial trucks, including safely entering and exiting the vehicles.

20. On July 25, 2016, Welch underwent a Department of Transportation ("DOT") medical examination with a certified medical examiner at Wake Forest Baptist Health Family Medicine. Although the practitioner determined that Welch had limited range of motion in his left shoulder, the practitioner determined that Welch had "adequate strength and ROM [range of motion] to do his current work" which was driving a tractor-trailer truck.

21. On July 25, 2016, the certified medical examiner granted Welch a full two-year DOT medical certification with no restrictions.

22. On or about July 30, 2016, Welch applied for a job with Defendant as a Yard Driver.

23. The qualifications for Defendant's Yard Driver position include a valid commercial driver's license and at least six months of over-the-road tractor-trailer driving.

24. On or about August 2, 2016, Defendant requested and received a motor

5

vehicle record for Welch. The motor vehicle record reflected that DOT had issued Welch a two-year medical certification with no restrictions valid from July 25, 2016 through July 25, 2018.

25. On or about August 3, 2016, Defendant's Talent Acquisition Specialist interviewed Welch by telephone.

26. On or about August 25, 2016, Defendant's Regional Transportation Manager Southeast ("Transportation Manager") interviewed Welch in person.

27. On or about September 14, 2016, Defendant's Transportation Manager offered Welch a Yard Driver position on the condition that Welch obtain a Department of Transportation medical certification; meet the physical requirements for the position; and could perform the essential functions of the Yard Driver position.

28. On or about September 16, 2016, Welch underwent a second DOT physical examination at Wake Forest Baptist Health.

29. The September 16, 2016 physical exam was performed by a Physician's Assistant, who was not the same examiner who had certified Welch in July. The Physician's Assistant noted on the exam form that Welch had a "tender left shoulder with abduction [less than] 120 degrees," that Welch could "internally rotate" his shoulder, and that Welch had "sufficient ROM to operate a vehicle and perform duties."

30. The same day, on or about September 16, 2016, Welch provided the new DOT physical form to the Transportation Manager.

31. On or about September 28, 2016, the Yard Supervisor administered

Defendant's required road test to Welch. During the road test, Welch demonstrated his ability to safely enter and exit a truck cab approximately three times while maintaining three points of contact with the truck, and to safely drive approximately 25 miles. The Yard Supervisor issued Welch a written Certification of Road Test, indicating Welch's successful passage of the test.

32. On or about September 30, 2016, the Transportation Manager told Welch that Welch was scheduled to start work as a Yard Driver on October 3, 2016.

33. Later that same day, on or about September 30, 2016, Welch received a call from the Director of Human Resources ("Director of HR"). The Director of HR told Welch that he was required to complete a second medical examination before he could start work because he had disclosed an old rotator cuff injury during his DOT physical. The Director of HR scheduled Welch for the next available appointment with Wake Forest Baptist Health, which was on or about Thursday, October 6, 2016.

34. At the appointment on or about October 6, 2016, the Director of Wake Forest Baptist Health Occupational Health Services ("Director of WFBH") conducted a fit for duty examination with the aid of Defendant's Yard Driver job description. During the examination, the Director of WFBH asked Welch to lift his left arm, conducted a strength test, and required Welch to demonstrate how he could open the back doors of a truck. Welch completed all required tasks with the exception of lifting his left arm directly overhead. The Director of WFBH did not ask Welch to demonstrate how he could safely enter and exit a vehicle.

7

35. The Director of WFBH told Welch that Welch was qualified for the Yard Driver job. Nevertheless, the Director of WFBH gave Defendant a form that restricted Welch from engaging in any overhead use of his left arm and shoulder because Welch was not able to raise his left arm above his head.

36. Based on the restriction given by the Director of WFBH, Defendant's Director of Transportation Safety determined that Welch could not safely maintain three points of contact between his body and the vehicle while entering and exiting the tractor-trailer cab.

37. The Director of Transportation Safety did not speak with Welch or ask Welch to demonstrate how he could safely enter and exit the cab of the truck prior to making this determination.

38. Based on the Director of Transportation Safety's determination, Defendant rescinded Defendant's offer of employment to Welch. On information and belief, the Director of HR made the decision to rescind Welch's job offer.

39. On or about October 12, 2016, the Director of HR told Welch that based on the Director of WFBH's medical restriction, Defendant was going to rescind the job offer.

40. Welch offered to demonstrate how he could do the job. The Director of HR declined Welch's offer, explaining that Defendant had to rely on the medical information provided to Defendant.

41. Two days later, on or about October 14, 2016, Defendant formally rescinded Welch's conditional offer of employment.

42. Defendant regarded Welch as having a disability because of a physical impairment, a left shoulder rotator cuff injury.

43. Defendant rescinded Welch's conditional offer of employment because Defendant regarded Welch as disabled.

44. On or about October 18, 2016, Defendant posted a Yard Driver position at its distribution center in Advance, North Carolina. Welch was not offered this position.

45. After October 24, 2016, Welch secured employment as a truck driver in positions that require him to safely enter and exit the truck cab multiple times each work day. As a general practice, Welch maintains three points of contact when he enters and exits the truck cab.

46. At all relevant times, Welch was able to perform the essential functions of the job he sought with Defendant with or without reasonable accommodation. Defendant refused to hire Welch because it regarded Welch as disabled in violation of the ADA.

47. The effect of the practices complained of above has been to deprive Welch of equal employment opportunities and otherwise adversely affect his status as an applicant for employment, because of his perceived disability.

48. The unlawful employment practices complained of above were intentional.

49. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Welch.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating against individuals because of their disabilities, including discrimination in hiring, firing, failing to provide reasonable accommodation to qualified individuals with disabilities, and any other employment practice which discriminates on the basis of disability.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make Welch whole, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement or front pay.

D. Order Defendant to make Welch whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E. Order Defendant to make Welch whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain, suffering, inconvenience, humiliation, loss of enjoyment of life, loss of civil rights, and other nonpecuniary losses, in amounts to be determined at trial.

F. Order Defendant to pay Welch punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

11

Respectfully submitted this the 26th day of April, 2018.

        EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

        JAMES L. LEE
        Deputy General Counsel

        GWENDOLYN YOUNG REAMS
        Associate General Counsel
        Equal Employment Opportunity Commission
        131 M Street, NE
        Washington, D.C. 20507

        /s/ Lynette A. Barnes
        LYNETTE A. BARNES (N.C. Bar No. 19732)
        Regional Attorney

        YLDA KOPKA (Ill. Bar No. 6286627)
        Supervisory Trial Attorney


        /s/ Yolanda W. Brock
        YOLANDA W. BROCK
        (N.C. Bar No. 36651)
        Senior Trial Attorney
        EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
        Charlotte District Office
        129 W. Trade St., Suite 400
        Charlotte, NC 28202
        Tel: (704) 954-6463
        Fax: (704) 954-6412
        Email: yolanda.brock@eeoc.gov

        **ATTORNEYS FOR PLAINTIFF**